IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IRON WORKERS NATIONAL PENSION PLAN, | : | |
| | : | |
| | : | |
| Plaintiff, | : | MISCELLANEOUS NO. 20-112 |
| | : | |
| v. | : | |
| | : | |
| SAMUEL GROSSI & SONS, INC., | : | |
| | : | |
| Defendant, | : | |
| | : | |
| M&T BANK, | : | |
| | : | |
| Garnishee. | : | |

**<u>MEMORANDUM OPINION</u>**

Smith, J.                                                                September 20, 2021

A national pension plan registered a foreign judgment in this court and then attempted to execute on the judgment by garnishing money held by the garnishee bank. The bank refused to turn over the funds and asserted a right of set-off. The pension plan has now moved to have the bank turn over the garnished sums. The defendant and the bank oppose the motion.

After considering the parties' submissions and arguments, the court will deny the motion for turnover because the bank has a valid perfected interest in the defendant's collateral, which takes priority over any judgment held by the pension plan.

## I.    PROCEDURAL HISTORY AND APPLICABLE RECORD

A collective bargaining agreement obligated the defendant, Samuel Grossi & Sons, Inc. ("SG&S"), to make contributions to the plaintiff, Iron Workers National Pension Plan (the "Plan"). *See* Jt. Stip. of All Uncontested Facts ("Jt. Stip."). Between January 1, 2017 and December 31, 2019, however, SG&S failed to make such contributions. *Id.* at ¶ 20; Doc. No. 1 at ECF pp. 2–3,

Nov. 12, 2020 Order, *Iron Workers National Pension Plan, et al. v. Samuel Grossi & Sons, Inc.*, No. 20-cv-1204 (DLF) (D.D.C.) ("Order"). Due to this failure, the Plan sued SG&S in the United States District Court for the District of Columbia and eventually obtained a default judgment of $493,430.68 for these delinquent contributions and $2,151.75 for accounting costs on November 12, 2020. *See* Order at 1.

On December 14, 2020, the Plan registered the judgment from the District Court for the District of Columbia in this court. Doc. No. 1. The Plan then filed praecipes for writs of execution along with interrogatories on the garnishee, M&T Bank ("M&T") on January 28, 2021. Doc. No. 3. M&T filed an amended answer to the writs of execution on March 18, 2021. Doc. No. 6. In the answer, M&T indicated that SG&S had two accounts with it, with one of the accounts, representing SG&S's operating account, containing $194,246.22. *See* Am. Answers of M&T Bank to Interrog. in Attachment at 2, Doc. No. 6. M&T also indicated that "[d]ue to pre-existing defaults of [SG&S] in its loan obligations to M&T, M&T's right of set[- ]off had accrued as of the date of service of the writ [of execution]." *Id.*

With regard to this right of set-off, M&T and SG&S had entered into an amended and restated loan and security agreement (the "loan agreement") on November 8, 2013. Jt. Stip. at ¶ 5. The subject of the loan agreement was a $10,000,000 revolving line of credit. *Id.* Under the loan agreement, SG&S granted M&T a security interest in all its existing and after acquired property to secure its obligations. *Id.* at ¶ 7. M&T perfected its security interest in SG&S's assets when it filed UCC-1 financing statements and UCC-3 continuation statements and amendments on April 20, 2004, December 1, 2008, April 1, 2009, December 31, 2009, October 23, 2013, and October 23, 2018. *Id.* at ¶ 8.

Because the loan agreement required SG&S to maintain its bank accounts with M&T, SG&S maintained two accounts with M&T: (1) a zero-balance demand deposit account for payroll and (2) a general operating account that also functioned as the concentration account for the revolving line of credit. *Id.* at ¶ 9. Whenever an outstanding balance existed on the revolving line of credit, SG&S's concentration account was swept and applied to the revolving line of credit. *Id.* at ¶ 11.

As indicated above, the balance of the concentration account was $194,246.22 when MT&T received the writ of execution and was subsequently reduced to $188,779.95 for account fees. *Id.* at ¶ 11. Due to M&T's refusal to turn over these funds based on its assertion of a right of set-off, the Plan filed a motion for an order directing M&T to turn over all funds held pursuant to the writ of execution on May 28, 2021. Doc. No. 9. Both SG&S and M&T filed responses in opposition to this motion for turnover on June 11, 2021. Doc. Nos. 13, 14. On July 15, 2021, the court held a hearing on the Plan's motion for turnover during which the parties set forth their respective arguments on the motion.

The parties filed a stipulation of uncontested facts and a separate stipulation of contested facts relating to the motion for turnover on August 17, 2021, and August 18, 2021, respectively. Doc. Nos. 20, 21. The motion for turnover is now ripe for disposition.

## II.    DISCUSSION

In the motion for turnover, the Plan argues that M&T does not have a right to set-off in this instance. *See* Br. in Supp. of Turnover at ECF p. 1, Doc. No. 9-1 ("While a right to setoff does exist in some instances, a bank setoff is not justified in this matter."). The Plan points out that for M&T to have a right of set-off in this case,

> there must be 1) mutuality of obligation between the depositor and the bank, 2) the funds to be setoff must belong to the depositor, 3) the funds must be deposited in a

general, as opposed to a special purpose, account, and 4) the debt owed to the bank by the depositor must be matured.

*Id.* (citing *Royal Bank of Pa. v. Selig*, 644 A.2d 741, 744 (Pa. Super. 1994) and *Lynch v. Cnty. Bank*, 1993 WL 390217 (Del. Super. Aug. 9, 1993)). The Plan contends that M&T is not entitled to a set-off in this case because the bank account at issue is a special account and SG&S's debt to M&T has not matured. *Id.* at ECF p. 3. The Plan also argues that even if the court were to find that M&T had a right to set-off, the court should grant their turnover request because (1) SG&S never disputed the facts in the complaint filed in the underlying action, (2) SG&S failed to pay its required pension contributions for a few years, (3) SG&S's failure to pay "jeopardizes the retirement security of thousands of [the Plan's] beneficiaries," and (4) "applying a bank setoff in this matter will put the retirement security of [the Plan's] beneficiaries in danger." *Id.* at ECF pp. 3–4.

In its response to the motion, SG&S argues that the Plan is not entitled to turnover of the funds at M&T because M&T is a perfected secured creditor over the funds and it has "unquestionable priority to the secured collateral over any judgment creditors [such as the Plan] who executed after perfection of [M&T's] security interest." Mem. of Law in Supp. of Def., Samuel Grossi & Sons, Inc.'s Opp'n to the Pl.'s Mot. for Turnover at 2, Doc. No. 13-1. SG&S also contends that the bank account at issue is a general operating account (and, thus, not a special account) and M&T's right to set-off is mature. *Id.* at 3–5.

As for M&T, it has responded to the motion for turnover by pointing out that it does not have to assert its right to set-off prior to someone commencing an attachment execution. Mem. of Law in Supp. of M&T Bank's Opp'n to the Pl.'s Mot. for Turnover and Joinder in Opp'n Filed by Samuel Gross & Sons, Inc. at 2, Doc. No. 14. In addition, M&T indicates that SG&S's account with it was an operating account and not a special purpose account, and it points out that the Plan

4

has provided no evidence to the contrary. *Id.* Finally, M&T asserts that the Plan has not presented evidence of criminal conduct, fraud, or any compelling circumstances, despite claiming that the retirement security of the Plan's beneficiaries is in danger, which would be sufficient to deny M&T's right of set-off. *Id.* at 3.

In response to M&T and SG&S's arguments, the Plan claims that SG&S has repeatedly made false claims in documents submitted to M&T. Resp. to M&T Bank and Samuel Grossi & Sons, Inc.'s Mots. in Opp'n to Pl.'s Mot. for Turnover ("Plan's Resp.") at ECF pp. 2–4, Doc. No. 17. These false claims included representations that SG&S was not bound by any collective bargaining agreements and did not have any pension obligations. *Id.* at 2–3. SG&S also misrepresented that it was winding down its business operations. *Id.* at ECF p. 3. Based on SG&S's repeated misrepresentations, the Plan contends that it has shown sufficient fraud to deny M&T's right to a set-off. *Id.*

In addition to this showing of fraud by SG&S, the Plan argues that a set-off is improper because SG&S and M&T did not have a mutuality of obligation. *Id.* at ECF pp. 4–5. The Plan points out that SG&S actually holds its account with M&T along with two other separate legal entities. *Id.* at ECF p. 5. Although SG&S could still demonstrate mutuality of obligations if the other two entities were its alter-egos, the Plan notes that SG&S has not made such a claim here. *Id.* As such, the Plan contends that the court should grant its turnover request. *Id.*

Although the court understands the Plan's focus on the set-off issue, it has not addressed the priority issue SG&S raised in its response to the motion, and the court finds that the priority issue is determinative with regard to the motion for turnover. The uncontradicted evidence shows that M&T, as a perfected and secured creditor, has priority to the secured collateral, i.e. the money in the operating account, over the Plan, which is a judgment creditor which executed on the monies

in the M&T account after M&T perfected its security interest. *See Klinger v. Pocono Int'l Raceway, Inc.*, 433 A.2d 1357, 1360 (Pa. Super. 1981) ("A perfected secured creditor ha[s] unquestionable priority to the secured collateral over any judgment creditors who executed after perfection of his security interest." (citation omitted). Thus, only when a lien creditor becomes a lien creditor before a security interest is perfected does that lien creditor have priority. *See* 13 Pa. C.S. § 9317(a).

Here, M&T perfected its security interest in SG&S's assets when it filed UCC-1 financing statements and UCC-3 continuation statements and amendments on April 20, 2004, December 1, 2008, April 1, 2009, December 31, 2009, October 23, 2013, and October 23, 2018. Jt. Stip. at ¶ 8. Perfection occurred well before the Plan obtained its 2020 default judgment or filed its writ of execution in 2021. Because the judgment was issued after M&T perfected its security interest, M&T has priority over any judgment creditors, such as the Plan. Therefore, the court cannot grant the Plan's turnover request.[1]

## III.    CONCLUSION

SG&S gave M&T a security interest in its cash and accounts, and M&T perfected its lien. This perfected security interest in SG&S's general operating account takes priority over the Plan's judgment lien which attached due to the garnishment action. As such, the court denies the Plan's motion for turnover.

---

[1] Even if the court were to go beyond the priority issue in resolving the instant motion, the court would still find that M&T had a right to set-off. In this regard, there was mutuality of obligation between M&T and SG&S. Even though the loan documents were entered into between M&T on one side and SG&S and two other legal entities on the other, the account at issue is not a joint account as claimed by the Plan. *See* Plan's Resp. at ECF p. 5 ("In this instance, M&T is attempting to use an account held by three separate legal entities . . . ."). Instead, it is an account held solely in SG&S's name. *See* Jt. Stip. at ¶ 9 ("The master operating account was solely in Grossi's name . . . ."). In addition, the funds being held by M&T belonged to SG&S. *See id.* (stating that operating account belonged to SG&S). Moreover, despite the Plan's arguments to the contrary, the account at issue is not a special purpose account. Instead, it is a "general operating account, . . . which also functioned as the concentration account for the Revolving Line of Credit." *Id.* Finally, the debt SG&S had owed to M&T had matured prior to execution of the garnishment.

The court will enter a separate order.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.